CULPEPPER, Judge.
This is an appeal by Augenstein Construction Company, Inc. from a judgment award *404 ing the plaintiff, appellee, Axion McGee, maximum weekly compensation during disability not to exceed 400 weeks beginning as of December 21, 1959, subject to a credit of $1400 for compensation payments previously made for the period, December 21, 1959, through September 27, 1960. Said judgment likewise cast defendant for medical expenses totaling $1,110.33, plus penalties of 12% on the approved portion of the bill of Dr. Peter A. Viglia, in the amount of $846. Plaintiff has answered the appeal, requesting the additional award of penalties and attorney’s fees on all amounts recovered and in the alternative penalties and attorney’s fees on all medical expense, and in the further alternative, attorney’s fees as to the award for the medical charges by Dr. Peter Viglia.
The issues presented by appellant’s assignment of errors, are (1) the occurrence of an accident on December 7, 1959, (2) plaintiff’s disability beyond September 27, 1960, to which date defendant paid weekly compensation, (3) whether plaintiff’s disability, if any, beyond September 27, 1960, was permanent or temporary, (4) the award for medical expenses and (5) the award of penalties on the bill of Dr. Peter A. Viglia in the sum of $846.
Addressing ourselves first to the issue of the occurrence of an accident or accidents, we find plaintiff contends that, in the course and scope of his employment as a winch truck driver for defendant, he sustained an accident on or about November 2, 1959 while attempting to crank a welding machine, at which time he twisted his back causing pain and injury. Plaintiff further contends that, after certain treatment, he returned to perform light duty in said employment and on December 7, 1959, he sustained another accident when the truck which he was driving rolled over a concrete pipe guard and dropped a distance of about 8 inches, causing his back to be jerked. It is plaintiff’s position that as a result of the injuries received in these two accidents he sustained total and permanent disability. In a well considered written opinion our learned brother below disposed of the issue as to the occurrence of these accidents by the following reasoning which we adopt as our own:
“Since the employer seriously disputes the happening of either accident, it is necessary that the Court first determine whether or not plaintiff had one or both of the alleged accidents in the course of his said employment. The evidence clearly establishes the fact of an accident on November 2, 1959, while plaintiff was engaged in cranking a welding machine and slipped and caught himself with his left hand and claims he felt a severe pain in the area of his back. Plaintiff described the nature of the accident, stating that it occurred shortly after the beginning of work on that date, that he reported to the company office and notified his foreman, Mr. Albert Durant, Sr., about the accident, and that the foreman sent him to the first aid station, where he was seen by Dr. J. W. Crookshank. Dr. Crookshank confirmed the examination of plaintiff on that date, mentioned plaintiff’s complaint of pain in the back and in the abdominal area, and reached a tentative diagnosis relating to a possible kidney stone or acute pancreatitis. Dr. Crookshank also referred to the fact that an accident report had been filed with the company in relation to plaintiff’s visit to the first aid station on that date. Mr. Durant, plaintiff’s foreman, confirmed the immediate report of the first accident, stating he later drove the plaintiff to Lake Charles, during which trip plaintiff decided to consult another doctor on that same day. The fact of the first accident was also confirmed by R. D. Frazier, who worked with plaintiff, as well as by Dr. Harry S. Snatic, whom plaintiff consulted during the afternoon of the date of the accident, and who treated plaintiff for the back injury until November 7, 1959, when he released the plaintiff to return to his work with *405 plaintiff’s full approval. Dr. Snatic testified that his findings were compatible with the history of the injury given him by plaintiff, and he concluded that he had sustained an injury to his muscles in the upper lumbar area of the back.
“Mr. Durant, the foreman, testified that plaintiff returned to work three or four days after the accident of November 2, 1959, with instructions from Dr. Snatic for light duty work, and he put plaintiff to work on a compressor, and later put plaintiff back to work on a winch truck, which developed to be the only work available, and it was accepted by the plaintiff. As mentioned above, the fact of the first alleged accident was clearly established, with resulting injury to plaintiff in the lumbar area of the back.
“The second accident was described by plaintiff much the same as alleged in his petition, but without the confirmation of the happening thereof by fellow employees.” “Mr. Frazier testified he knew of the plaintiff’s winch truck being stuck, but knew nothing of .any injury then sustained by plaintiff. Mr. Durant, plaintiff’s foreman, testified he did not know of any second accident causing injury to the plaintiff until a few days prior to the trial of the case. Mr. Walter Doucet knew of the truck accident, having pulled plaintiff’s truck out after it ran over the pipe support, but explained that plaintiff was standing by his truck when that was done and that he did not recall that plaintiff told him of having been injured in that accident. Later, Mr. Doucet was recalled to testify.and stated that plaintiff had told him he was hurt at the time, and the witness explained that he did not see plaintiff receive any injury and was mistaken in his original testimony to the effect that plaintiff had made no complaint whatsoever to him. After his truck was pulled out, plaintiff testified it was almost time for lunch, and he went to the company office and requested the chief clerk, Mr. K. J. Trahan, to make an appointment for him with Dr. Peter A. Viglia, and the appointment was arranged for five o’clock P.M. on that same day. Plaintiff did report to Dr. Viglia, who testified that he first examined plaintiff on December 7, 1959, and that plaintiff gave him a history of the two accidents, one on that date and a prior accident on November 2, 1959, substantially the same as testified to by plaintiff himself. Plaintiff maintained that he advised Mr. Durant and Mr. Tra-han of his second accident, but each denied that it had been reported to him. Mr. Trahan did recall the request of plaintiff on December 7, 1959, in relation to the appointment with Dr. Viglia.
“The record shows that Dr. Viglia treated the plaintiff for injury in the back, except for short periods of time, from December 7, 1959, through September 27, 1960. After his first examination, the plaintiff testified that he did not return to work for about a week after the alleged second accident, and that he worked two or three days and was then “laid off” and was never called back to work. Mr. Trahan testified that the records of the company show that plaintiff worked only a total of eight hours during the week in which the alleged second accident occurred, and it may be assumed that he was credited with eight hours work on December 7, which is the date plaintiff says the second accident occurred. Company records show that plaintiff worked 26 hours during the following week and that his employment was terminated on December 17, but that subsequently he was called back to work for short periods and his employment was finally terminated on December 28, 1959, along with six other operators.”
“Although the evidence indicates very strongly that Mr. McGee’s fellow *406 employees were unaware of any injury sustained by him on December 7, 1959, and denied that he reported any injury or complained of such, it was established that the winch truck operated by Mr. McGee on that date was involved in an accident, the nature of which is circumstantial corroboration of Mr. McGee’s testimony that he was severely jolted in that accident, causing pain in the area of his back. The evidence does not establish that he consulted Dr. Viglia about his injured back on that same date and was found to have symptoms confirmatory of a recent accident of the type he described. All of the medical histories related by the various doctors who examined and/or treated him confirmed the fact of two accidents in the course of his employment, one in November and the other in December of 1959, and these facts and circumstances have caused this Court to conclude that the plaintiff sustained one or two accidents causing injury to his back, for which he was subsequently examined and/or treated by several competent doctors.”
Defendant’s next contention is that plaintiff has not proved he was disabled beyond September 27, 1960, to which date weekly compensation was paid. In discussing this issue we find, at the outset, the evidence establishes that plaintiff sustained an injury to his back in 1947 diagnosed as a ruptured disc at the Lr4 interspace, for which recommended surgery was declined by plaintiff who was paid workmen’s compensation for a total of 400 weeks for disability resulting from that accident. Plaintiff testified that following the 1947 injury he returned to his farm in Evangeline Parish, and after two or three years, no longer needed medical treatment. The evidence shows that in 1955 plaintiff moved back to Lake Charles where he engaged in various employments requiring strenuous physical labor until the accidents which occurred in November and December of 1959 while working for the defendant. Plaintiff first worked laying ceramic tile for a period of four to six months, then he was employed by a gas appliance company delivering appliances and driving a truck, next he worked for several months for the maintenance division of the State Highway Department. All of these various work engagements involved heavy manual labor, and the fact that he did perform such labor without complaint or indication of any disability for the Highway Department was corroborated by Mr. Phillip Fontenot, who was his foreman for a period of six to seven months. In about July of 1957 plaintiff went back to general construction work, as an operating engineer for the defendant and he performed heavy manual labor in that employment, driving a winch truck and maintaining welding machines, until the accidents in November and December of 1959. His ability to perform this work for the defendant was confirmed by the testimony of his superiors and his fellow employees.
The above discussion of the 1947 accident and plaintiff’s recovery therefrom is not for the purpose of indicating that the accidents which occurred in November and December of 1959 aggravated the pre-ex-isting 1947 injury, because even Dr. George P. Schneider, the only orthopedic specialist called by plaintiff, testified there was no relationship whatever between plaintiff’s present disability and the 1947 ruptured disc. Dr. Schneider testified that plaintiff’s present disability is causally related only to a compression fracture at the L-2 level. The sole purpose of our discussing the 1947 injury is to show that plaintiff had recovered from said injury and returned to strenuous physical labor for several years preceding the accidents which occurred in 1959.
To prove disability, plaintiff called two expert medical witnesses. The first was Dr. Peter A. Viglia, a general practitioner, who examined plaintiff immediately after the accident of December 7, 1959. Dr. Vig-lia’s initial diagnosis was muscle strain of the upper lumbar area for which he prescribed diathermy and medication. Dr. *407 Viglia continued to see and treat the plaintiff and finally called in consultation Dr. George P. Schneider, a specialist in orthopedics, who examined the plaintiff on January 21, 1960. It was only after Dr. Schneider expressed the opinion that plaintiff had a compression fracture at L-2, that Dr. Viglia re-evaluated the x-rays which had been taken by him and also concluded from these x-rays and from the physical examination that the claimant had a compression fracture at L-2. Dr. Viglia continued to see claimant until as late as February of 1961 and expressed the opinion that plaintiff could not return to the strenuous physical work which he was doing at the time he was injured.
Dr. George P. Schneider first examined Mr. McGee on January 21, 1960 at the request of Dr. Viglia and from x-rays and a physical examination he diagnosed a “slight left lateral compression fracture at L-2”.
Although Dr. Schneider also found a congenital defect at L-S, he expressed the opinion that this congenital defect was not involved in the present symptoms. As stated above, Dr. Schneider was also definitely of the opinion that if Mr. McGee had sustained a ruptured disc at L-4 in 1947, this also was not in any way involved in the present symptoms. He first expressed the opinion that the findings were of a mild nature requiring only conservative treatment which he thought would lead to eventual recovery within three to four months from the date of his initial examination. Subsequent examinations reflected no substantial change in his opinion except in the tightness and stiffness of muscles as a result of nonuse. Following an examination of the claimant on August 5, 1960, Dr. Schneider rendered a report of date September 12, 1960, stating that the only remaining symptoms of the injury were tightness in the erector spinae muscle masses of the back and the hamstring musculature in both legs and marked discomfort on direct palpation over the injured lumbar vertebra. In said report Dr. Schneider recommended “that the procedure of choice was the resumption of his usual activities” which should rehabilitate the said muscles within six to eight weeks after his said examination of August 5, 1960. It was after receipt of this report that the defendant stopped weekly compensation payments on September 27, 1960, which was approximately eight weeks after Dr. Schneider’s examination of August 5, 1960. However, the claimant did not return to work involving strenuous physical activities and consequently his muscles were not rehabilitated. Dr. Schneider expressed the opinion that perhaps there was an anxiety factor in addition to the weakness of the muscles and that “the two factors combined are sufficient to continue his disability for a rather indefinite period of time.” However, under cross-examination, Dr. Schneider expressed the opinion that as far as the physical symptoms were concerned Mr. McGee would recover therefrom after approximately six to eight weeks of gradually increased activity, although at the outset, because of the weakness in his back muscles and his hamstring musculature he would experience some discomfort. We quote the following from Dr. Schneider’s testimony:
“Q. Doctor, can you with any reasonable medical certainty give us a time when this could be accomplished by Mr. McGee returning to his work and resolving the tenseness in his muscles in his back and hamstring muscles in his buttocks?
“A. Unfortunately we are very limited in our ability to return individuals to limited employment. I feel that would be the ideal situation for Mr. McGee, and, if this could be carried out by a responsible and cooperative employer, that in a period of approximately six to eight weeks on light employment, he could progressively advance to the state where he could resume his usual type employment. This is a variable and is based on my previous experience with similar type problems. It *408 may be longer; it may be less. This is an approximation.
“Q. Doctor, from your experience, with reasonable certainty, would the approximation be much more than three months? You said six weeks to eight weeks.
“A. I feel that under the circumstances described, that that should be an adequate period of time. '
“Q. And with reasonable medical certainty, if Mr. McGee returned to work, progressively harder work, over that period of time, that he would resolve the physical factors that are now in his back, in the erector spinae muscles and the hamstring muscles.
“A. Yes, sir.”
The defendant first called as expert medical witnesses, Dr. Donald E. Robinson and Dr. Frank H. Marek, both specialists in radiology, who testified that after examining and rechecking thoroughly numerous x-rays, they were of the positive opinion that there was no compression fracture at L-2. These two doctors admittedly made no thorough physical examination and based their opinions on an examination of the x-rays. The defendant also called Dr. Jerome W. Ambrister, a specialist in orthopedics, who examined plaintiff on February 26, 1960 and again on February 10, 1961, and concluded that there was no fracture or dislocation at the L-2 level. Dr. Ambrister was of the opinion that plaintiff could return to his former employment of operating a winch truck, although he did find that Mr. McGee had slight limited motion of his back due to nonuse of the muscles.
Defendant also called Dr. Charles V. Hatchett, an orthopedic surgeon, who had seen and treated plaintiff for the 1947 ruptured disc at L-4. Dr. Hatchett examined Mr. McGee on January 17, 1961 and expressed the opinion that any present difficulty experienced by Mr. McGee is caused by nerve root compression from the old ruptured disc sustained in 1947. Dr. Hatch-ett testified that even if plaintiff had aggravated the old disc injury in November or December of 1959, he had recovered therefrom and that as of the date of his examination in January of 1961 Mr. McGee’s-back was in the same condition as it was-before the 1959 injury. Dr. Hatchett expressed the positive opinion that there was-no fracture at the L-2 level nor any symptoms referable thereto.
It is the contention of the defendant that even under the testimony of Dr. George P. Schneider, the only orthopedic specialist who testified for plaintiff, Mr. McGee’s present complaints are referable solely to a compression fracture at L-2 from which he has completely recovered except for the tightness and stiffness of muscles due to nonuse and that the plaintiff has simply refused to follow the recommendation of Dr. Schneider that he return to strenuous activities in order to rehabilitate these muscles. The defendant cites Fouchea v. Maloney Trucking & Storage, Inc., 108 So.2d 273, 277 (Oxdeans App.1959) in which the court held as follows:
“Plaintiff contends that if he has to endure pain in the course of his work he must be considered totally disabled because the law does not exact that an injured workman must return to work under the handicap of severe pain. We agree that this is a correct statement of the law as would be applied in a case where the pain is caused by the injury itself, but we do not agree that where the injury has been completely healed and the workman’s condition is the result only of a long disuse of the injured member that he can refuse to return to work because of slight pain and thus not cooperate with the physicians by taking the prescribed work therapy.
“We are convinced that exercise is all that can improve plaintiff’s ability to work, and we agree with what the *409 Second Circuit Court of Appeal said in •Coats v. Windsor, 167 So. 483, 484:
“ * * it can make no difference whether the exercise he takes is idle ■exercise or used in a gainful occupation, so. long as the exercise is not too strenuous.’
“Other cases in which was discussed the duty of an employee to cooperate in the treatment given him by returning to work and exercising the injured member where such activity would be beneficial to his condition are O’Niel v. M. W. Kellogg Co., Inc., La.App., 190 So. 182; Costello v. French Market Ice Co., La.App., 159 So. 466, and Daste v. Gwin, 13 La.App. 378, 128 So. 41, decided by this court.”
In answer to this contention, plaintiff argues that both Dr. Viglia and Dr. Schneider, who were the treating physicians, have expressed the opinion that Mr. McGee cannot resume his former employment without enduring substantial pain and that he is therefore deemed totally and permanently disabled. See Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175 and the many authorities cited therein. Plaintiff also cited Brannon v. Zurich General Accident and Liability Ins. Co., 224 La. 161, 69 So.2d 1, and the authorities cited therein, for the proposition that a workmen’s compensation claimant will be deemed totally and permanently disabled where he cannot return to work and at the outset perform all of the duties of the same type of employment he was doing at the time of the accident.
The case of Cummings v. Albert, 86 So.2d 727, 730 (1st Cir.App.1955) is similar to the instant case except that there apparently was a conflict in the medical testimony as to whether or not the claimant would be rehabilitated by a return to his former type of employment, and the court held, “ * * * the test is not whether a plaintiff in a compensation case is able to do light work, but is whether or not he is able to do the same work he was doing when injured, or similar work, and we are not to speculate on the time it would require for his recovery or in fact whether he would recover at all, especially in the face of the conflicting medical testimony.”
In the instant case, unlike the Cummings case, there is no serious conflict in the medical testimony. Dr. Schneider, the only orthopedic specialist who testified for the plaintiff, expressed the definite opinion that whatever disability the plaintiff now has is the result of nonuse of muscles following a compression fracture at L-2 and that these muscles would be rehabilitated after six to eight weeks of returning to gradually increased activities. Defendant’s expert medical witnesses, Dr. Robinson, Dr. Mar-ek, Dr. Ambrister and Dr. Hatchett, all testified positively that there was no compression fracture at the L-2 level. As to the testimony of Dr. Viglia, a general practitioner, who testified for the plaintiff, he simply áccepted generally the diagnosis and opinion of Dr. Schneider. Under these circumstances, claimant must rely on the testimony of Dr. Schneider, if he is to recover workmen’s compensation benefits in these proceedings. The issue with which we are presented is therefore identical to that in the case of Fouchea v. Maloney Trucking & Storage, Inc., supra, in that the injury received in the accidents in the instant case has completely healed and the claimant’s present condition is the result only of a long disuse of the injured muscles. In our opinion, under these circumstances, the plaintiff cannot refuse to return to work because of slight discomfort and thus not cooperate with his physician, Dr. Schneider, by taking the prescribed work therapy. With reference to the degree of discomfort or pain which Mr. McGee would suffer during the period of rehabilitation of his muscles, we note that Dr. Schneider testified as follows:
“Q. What is your opinion as to whether or not Mr. McGee is presently in pain?
“A. I feel it would be difficult to delineate the factor of pain. This type of process is most consistently associated *410 with an aching factor of discomfort rather than true pain, and by his own admission the utilization of medications which I prescribed for him and the utilization of mild salicylate preparations on his part has afforded some relief to his type of discomfort, and that is also consistent with the picture that he presented.”
For the reasons hereinabove set forth, it is our opinion that plaintiff is entitled to no weekly compensation payments beyond the date, September 27, 1960 on which payments were stopped by the defendant.
In view of the above conclusion, claimant is entitled only to medical expense incurred through said date of September 27, 1960. We note that of the medical expense in the sum of $846 represented by the bill of Dr. Viglia, the sum of $144 was incurred after September 27, 1960, and this amount must be deducted, leaving only the sum of $702 of Dr. Viglia’s bill for which plaintiff is entitled to recover in these proceedings. Similarly, the lower court judgment awarded $200 for the bill of Dr. Schneider, but of this amount only $75 was incurred before September 27, 1960. The item of $19.33 for Snell’s Limb & Braces, Inc., as well as the item of $45 for Lake Charles Memorial Hospital were both incurred after September 27, 1960 and must also be disallowed. The total amount of medical expenses for which plaintiff is entitled to recover in these proceedings is therefore the sum of $777.
As regards penalties and attorney’s fees, we, like the trial court, are of the opinion that the defendant did act in an arbitrary manner in refusing and neglecting to pay the approved portion of the medical bill of Dr. Viglia. The principal excuse offered by defendant for failure to pay this bill was that it thought Dr. Viglia had made unwarranted charges for time consumed in consultation with specialists since other doctors in the area did not charge for such services. Under the evidence, this did not justify defendant’s failure to pay the bill of Dr. Viglia in said sum of $702, on which, it is our opinion, plaintiff is entitled to recover penalties of 12%. We also are of the opinion that claimant is entitled to recover attorney’s fees as regards the said medical bill of Dr. Viglia, but proportionate to the recovery in this respect, which in our opinion is the sum of $300. See the recent case of Shuff v. Liberty Mutual Insurance Company, 134 So.2d 707 (3rd Cir.App.1961, writ denied) and the authorities cited therein.
For the reasons hereinabove set forth the judgment appealed from is reversed and set aside insofar as it awards plaintiff weekly compensation over and above that already paid for the period ending September 27, 1960. The judgment is amended by reducing the total amount awarded for medical expenses to $777, and by reducing the amount of Dr. Viglia’s bill, on which penalties of 12% are awarded, to $702. In addition, an attorney’s fee of $300 is awarded plaintiff. As to legal interest and in all other respects the judgment is affirmed. All costs of this appeal are assessed against the defendant.
Reversed in part, amended, affirmed in part.
SAVOY, J., concurs with written reasons.
TATE, J., concurs in part and dissents in part with written reasons.