161 So.2d 460 (1963)
Curtis MITCHELL
v.
CONNECTICUT INDEMNITY COMPANY.
No. 5929.
Court of Appeal of Louisiana, First Circuit.
July 1, 1963.
Certiorari Refused November 12, 1963.
On Rehearing March 2, 1964.
*461 Badeaux & Gisevius, by Reginald T. Badeaux, Jr., Robert R. Gisevius (On Rehearing), New Orleans, for appellant.
Bienvenu & Culver, by P. A. Bienvenu, New Orleans, Timothy J. McNamara (On Rehearing), for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LOTTINGER, Judge.
This is a suit in workmen's compensation by Curtis Mitchell, the petitioner, against his employer's compensation insurer, Connecticut Indemnity Company of New Haven, Connecticut, the defendant. The Lower Court awarded judgment in favor of petitioner and against defendant for specific injuries. The petitioner has taken this appeal seeking to have himself declared permanently and totally disabled, and for benefits accordingly.
The evidence discloses that petitioner is a painter by trade and on June 25, 1959 while employed as such by Howard Creel he suffered an accident resulting in injury for which he now seeks benefits under the Workmen's Compensation Act. At the time of the accident he was performing work as a painter on a school job in the Parish of Washington, Louisiana.
The petitioner was examined and treated by Dr. L. L. Lancaster, a general practitioner *462 who eventually discharged him as having recovered from his injury and able to return to work on December 17, 1959. Petitioner was also examined by Dr. H. R. Soboloff, an orthopedic surgeon, and Dr. Vernon R. Kroll, a general surgeon.
The evidence reflects that the petitioner received compensation for a period of 26 weeks at the rate of $35.00 per week or a total sum of $910.00 during the period from the date of his injury, June 25, 1959, to December 23, 1959, which was one week subsequent to the date of his discharge by Dr. Lancaster. In his petition, the petitioner seeks compensation benefits at the maximum amount for total and permanent disability. There is no question but that if found to be totally and permanently disabled petitioner would be entitled to the maximum weekly benefits as provided in the act.
The defendant filed answer denying that the petitioner is totally or permanently disabled in setting forth his discharge by Dr. Lancaster. Defendant also alleges that subsequent to his discharge by the said doctor an agreement was reached for compromise and settlement with petitioner for an additional sum of $200.00 and that, although the settlement pleadings were prepared, and defendant was willing to settle for said amount, the petitioner withdrew from his agreement after consulting Counsel. Simultaneously with the filing of its answer, the defendant deposited the sum of $200.00 in the Registry of the Court in compromise of the matter and as evidence of its good intentions.
The Lower Court held that the petitioner sustained a specific injury to his foot resulting in a five to ten per cent disability thereof, and concluded that the benefits already paid, plus the sum of $200.00 deposited in the Registry of the Court would fully and adequately cover the compensation due petitioner. The petitioner has taken this appeal asking that the judgment of the Lower Court be reversed so as to declare him totally and permanently disabled, and that he be awarded benefits accordingly. There is also at issue herein a bill of exception taken by the defendant based upon the refusal of the Lower Court to allow defendant to introduce and show the Court certain moving pictures of the petitioner while at work subsequent to the accident. The purpose for this introduction was to discredit the credibility of petitioner in his testimony, that he was unable to do any work of a reasonable character. The Lower Court refused to allow these moving pictures to be introduced for such purposes because of the fact that the defendant had not disclosed its intention of so doing at a pretrial conference held between the parties to this suit.
The only question upon which there was any serious dispute in the Lower Court, and upon which there is any serious dispute before this Court is as to the disability of petitioner. We feel that there is no question but that there is a five to ten per cent disability to the left foot of petitioner as was found by the Lower Court. This amount of disability was testified to both by Dr. Lancaster and Dr. Soboloff. The question as to permanent and total disability, however, is an entirely different matter.
Dr. Lancaster, who was the first to examine petitioner and who treated him for the injuries, testified that, as a result of the accident, petitioner received contusions and abrasions of the left elbow on the medial aspect, a sprained ankle and a fracture of the oscalsis of his left foot. The injury upon which petitioner bases his claim of total and permanent disability was the fracture of the oscalsis of his left foot.
Subsequent to the accident and the resulting injuries, the petitioner suffered another injury to the ankle of his left foot, however this second injury is of no concern to this present suit as all the medical testimony is to the effect that the second injury has totally healed and that it is easily distinguished from the first injury as it was to a different portion of the foot.
*463 After analyzing all of the medical testimony introduced in this matter, we have come to the conclusion that the petitioner has recovered, and his left foot is substantially in as good a condition as it was prior to the accident. The only residual was a twenty to twenty-five per cent loss of plantar flexation of the foot. Both Dr. Lancaster and Dr. Soboloff testified that this loss of flexation resulted in a five to ten per cent loss of the use of his foot. With regard to the question of temporary and total disability, the doctors were in substantial agreement. There is no question but that the petitioner could return to his work, however the question was raised as to whether or not he could perform the same duties which he performed prior to the accident without any pain. We believe that Dr. Soboloff gave the best résumé of petitioner's condition, in this regard, as follows:
"The reason would be that toward the end of an eight hour day, this man is going to have aching and soreness in the feet in climbing up and down ladders all day long, working, as counsel points out, on girders, constantly working on ladders for maybe several hours at a time, working in a squatting position, all of these things would give him aching and soreness toward the end of an eight hour day and if he was required to do this and this only, then it would be no different than what I originally stated, that I don't think the man can do that on a full unrestricted basis. He can do it with some modification, some restrictions, he could do it if he had some period of rest or if he could work at a level surface or on a scaffolding for an hour or two at a time to rest in between standing on a ladder or something." Italics supplied.
The Workmen's Compensation Act provides for maximum unemployment benefits when a worker receives an accidental injury resulting in his total and permanent disability to do work of a reasonable character. In applying this doctrine, the Courts have held an injured workman to be totally and permanently disabled when, although he is physically able to do the same work, he does it under pain or with danger to his safety. In Loflin v. Erectors and Riggers, Inc., La.App., 68 So.2d 694, the Court allowed recovery on the basis of a permanent partial disability to an iron worker who had suffered a ten per cent loss of the use of his left forearm. In discussing the question of total disability and partial disability, the Court said:
"It does not necessarily mean that an injured employee has to be able to do and perform all of the identical duties he is called upon to do during the course of his employment. If he can do substantially all of them, he is not totally disabled within the provisions of the statute, and the total disability provisions are not to apply. Distinction has been made occasionally in applying that section of the statute when the employee is a common laborer and when he is a skilled laborer. This distinction has grown out of the jurisprudence and not because of any statutory provision. Whether the employee is a common laborer or whether he is a skilled employee, the true test is whether or not the injury suffered by him prevents him from doing work of a reasonable character.
"It is not a fair test to say that a skilled employee cannot do work of a reasonable character because he cannot do every identical thing he was capable of doing prior to the accident any more than it is to say that a common laborer can do the same thing he was doing at the time of the accident. The test to be applied on the question of whether or not the total disability is to be applied is whether the injured workman can do and perform the same or similar work to that he was performing at the time of the accident. We believe that the best criterion to follow in determining this question is whether or not, subsequent to the accident and injury, *464 the workman did perform, and do the same type and character of work as that which he did at the time of the injury. If the workman only suffers a partial impairment of an arm or a leg, and it does not produce disability to do work of a reasonable character, then the specific injury provisions of the statute should be applied based on the percentage of the disability, but if the accident produces partial disability to do work of a reasonable character, then that section of the statute should be applied."
As was stated by the Court in the Loflin case, the best criterion to follow in order to determine the question of whether or not a workman is totally disabled, is whether the injured workman can do and perform the same or similar work which he was performing at the time of the accident. We believe that the evidence discloses that petitioner is able to perform the same or similar work which he was doing prior to his accident without pain and without danger to his safety. The portion of the testimony of Dr. Soboloff which we have quoted above, we believe, sets forth unusual condition rather than the usual one. We do not believe that a painter in his occupation is required to stand on a ladder for an eight hour period of time without rest. In his occupation he may stand on a ladder for an hour or so then climb down to mix paint or perform other tasks, then stand on a flat surface for a period of time, under which circumstances Dr. Soboloff indicated that petitioner did receive no pain.
Furthermore, there is evidence in the record to the effect that the petitioner did return to his prior occupation subsequent to the accident. We find that the Lower Court was correct in holding that petitioner was not totally and permanently disabled.
In view of our holding regarding the lack of total and permanent disability, the question as to the admissibility of the moving pictures into evidence to test the credibility of petitioner becomes moot.
With regard to benefits for loss of use or function of a specific member, LSA-R.S. 23:1221 provides for sixty-five per cent of wages during a period of 125 weeks for the loss of a foot. To compute the compensation payable for a partial loss of use of a member we multiply the per cent of partial loss times sixty-five per cent of wages and allow the amount thus obtained, per week, for the number of weeks permitted for the total loss of the member. Any compensation based on this formula is regulated by LSA-R.S. 23:1202 setting out that the minimum compensation that can be paid per week is $10.00. Lethermon v. American Insurance Co., La.App., 129 So. 2d 507.
The evidence shows that total weekly benefits were paid by the defendant from the date of the injuries until petitioner was discharged by Dr. Lancaster. During this period of time, petitioner was totally disabled to do his work, and for this period he was entitled to the maximum benefits of $35.00 per week. Subsequent to his discharge, however we find that the petitioner still suffers a five to ten per cent disability of his left foot.
The record in this matter is silent as to the amount of wages the petitioner was earning at the time of the accident. It was stipulated at the pre-trial conference, however, that the petitioner's compensation benefits, if any, would be at the rate of $35.00 per week. Under the act, the minimum weekly benefits are fixed at $10.00 per week. The act further provides that for loss of a foot, when such loss does not result in permanent and total disability, the employee is entitled to sixty-five per cent of his wages for a period of 125 weeks, however, due consideration must be given to the maximum and minimum benefits allowable under the act. Under the circumstances, we feel that for the five to ten per cent loss of the use of his foot petitioner is *465 entitled to benefits at the rate of $10.00 per week for a period of 125 weeks. In accordance with the provisions of LSA-R.S. 23:1223, however, the defendant is entitled to a credit of $910.00, same being the sum of the benefits already paid on a dollar for dollar basis. Miller v. General Chemical Division, La.App., 128 So.2d 39.
Petitioner claims that he is entitled to statutory penalties and reasonable attorney fees in accordance with the provisions of LSA-R.S. 22:658. This statute provides for same when it is found that the failure of an insurer to pay any claim is arbitrary, capricious and without probable cause. Now there is no question but that the petitioner is entitled to benefits for partial loss of the use of his left foot and that such benefits are in excess of the amounts paid and tendered. Although defendant may have been justified in stopping payments of $35.00 per week when it received the report of Dr. Lancaster dismissing the petitioner as able to return to work, the record affirmatively discloses that the reports of Dr. Kroll and Dr. Soboloff furnished to the insurance company showed that the petitioner sustained a five to ten per cent loss of use or function to his left foot and was then compensable under LSA-R.S. 23:1221(o) and payments of compensation in such amounts should have been resumed by defendant. Such would have been in line with the holding in Seal v. Lionel F. Favret Company, 238 La. 60, 113 So.2d 468, where the Court held the defendant without probable cause when it received a physician's report indicating that the petitioner should return to work but ignored subsequent reports from the doctors giving unquestionable notice of petitioner's total and permanent disability.
In determining the amount of penalties, the law provides for a credit of the amounts paid or tendered. We feel that the failure of the defendants to pay benefits in accordance with the schedule for partial loss of use or function of the foot was without probable cause. The penalty is computed at the rate of 12% of the difference between the amount due and the amount paid and tendered. The amount of compensation already paid is in the sum of $910.00. The amount tendered, and which is on deposit in the Registry of the Court, is the sum of $200.00. The penalty will therefore be computed by subtracting the total amount paid and tendered, in the sum of $1,110.00 from the total amount due for the specific loss, in the amount of $1,250.00, and multiplying the figure thus reached, in the sum of $140.00, by twelve per cent, the latter being the rate of penalty. The penalty will, therefore, be twelve per cent of $140.00, or the sum of $16.80. Reasonable attorney fees will be assessed at $750.00.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to increase the award to petitioner to the sum of $10.00 per week for a period of 125 weeks subject, however, to a credit of $910.00, being the amount already paid, and providing for penalties in the sum of $16.80, and attorney fees in the sum of $750.00. All costs shall be paid by defendant. As so amended, the judgment of the Lower Court will be affirmed.
Judgment amended and affirmed.

On Rehearing
LANDRY, Judge.
Upon application of defendant-appellee, a rehearing was granted herein limited to the question of the amount of attorney's fees awarded plaintiff as penalties by this court.
Defendant vigorously contends the amount of $750.00 awarded plaintiff as attorney's fees is disproportionate considering the court allowed compensation in the sum of only $340.00 more than that which had been paid prior to institution of suit, and only $140.00 above the amount tendered in compromise and subsequently deposited in the registry of the trial court. Predicated upon the foregoing circumstances, defendant-appellee urges a drastic reduction *466 in the sum of $750.00 awarded in the original hearing before this court. In substance defendant contends the award of attorney's fees should be based upon two factors alone, namely, the amount of the award and the nature and amount of services rendered by plaintiff's attorney.
Learned counsel for plaintiff-appellant, however, concedes the applicability of the factors urged by counsel for defendant, but maintains the court should take into consideration an additional factor, namely, the degree of defendant-insurer's good or bad faith in declining payments. In this regard, illustrious counsel for plaintiff in substance contends the applicable statute LSA-R.S. 22:658 has been declared penal in nature therefore the degree of the insurer's good or bad faith in each particular instance should be taken into consideration in assessing the award of attorney's fees when such an award is made.
The applicable statute, LSA-R.S. 22:658 clearly and expressly provides for the payment of reasonable attorney's fees "for the prosecution and collection of such loss" when an insurer arbitrarily fails to pay a loss within sixty days of date of receipt of proof of loss and "reasonable attorney's fees for the prosecution and collection of such amount" when the suit is to collect the difference between the amount paid or tendered and the amount due.
It is well settled jurisprudence that an award of attorney's fees pursuant to the statute in question must be determined in the light and circumstances of each individual case. In making such awards much discretion rests with the courts. In Nomey v. Pacific Mutual Life Ins. Co., 212 La. 820, 33 So.2d 531, 1 A.L.R.2d 946, the Supreme Court announced the following applicable rule:
"The extent of services of attorneys in cases is so variable that it is impossible to fix a set rule. Consideration must be taken to the amount involved and the amount of services rendered."
Also apropos the matter under consideration is the ruling in Cain v. Employers Casualty Company, 236 La. 1085, 110 So.2d 108, wherein the Supreme Court clearly indicated the sole limitation upon the amount of such awards of attorney's fees is that they be "reasonable" as expressly contemplated by the statute in question.
We perceive no merit in plaintiff's contention that the degree of the insurer's bad faith should be taken into consideration in assessing the amount of attorney's fees when same are found to be due. Nor is plaintiff's position in this regard supported by any cited authority. We believe the question of good or bad faith, and the degree thereof as related to the insurer's unreasonableness, arbitrariness or capriciousness in denying a claim, is ordinarily germane only to the issue of whether attorney's fees are recoverable at all and has no bearing whatsoever upon the amount of said fees, the amount being determinable solely upon the basis of the extent of recovery and the nature and amount of services rendered by plaintiff's attorney. If the insurer's refusal to pay is such that his actions in this regard are unreasonable, arbitrary and capricious, he incurs the statutory penalty as well as the obligation to pay attorney's fees and thereafter the question of good or bad faith generally is of no further relevancy. Excepted, however, would be those instances wherein the conduct of the insurer affects, adds to or increases the nature and extent of the service required of the claimant's attorney to effect recovery of the sum withheld. In the case at bar no such showing has been made. To hold otherwise, in our judgment, is to assess a penalty upon a penalty which we believe would be unconscionable, confiscatory and unreasonable whereas the statute clearly provides only "reasonable attorney's fees" are recoverable.
In urging reduction in the sum initially awarded herein defendant has called our attention to the following cases: Darby v. Johnson, La.App., 118 So.2d 707, wherein *467 attorney's fees were set at $75.00 upon a judgment for $282.75; Shuff v. Liberty Mutual Ins. Co., La.App., 134 So.2d 707, in which attorney's fees of $150.00 were allotted for recovery of $276.62; McGee v. Augenstein Construction Co., La.App., 137 So.2d 403, which awarded judgment for $702.00 and attorney's fees of $300.00, and Harris v. Great American Indemnity Co., La.App., 142 So.2d 594, in which there was judgment for plaintiff for $13.80 and an award of attorney's fees in the amount of $98.00.
However, we note that in Phillips v. Underwriters at Lloyd's of London, La.App., 128 So.2d 318, we awarded $350.00 attorney's fees on a judgment for $120.00. In Hale v. Republic Drilling Co., La.App., 109 So.2d 268, this court assessed attorney's fees of $750.00 on a judgment for $450.00. An award of $350.00 attorney's fees was increased from $350.00 to $500.00 by this court in Walters v. General Accident and Fire Assurance Corporation, Ltd., La.App., 119 So.2d 550, predicated on the complexity of the issues involved notwithstanding plaintiff's recovery of the sum of only $281.34 for unpaid medical bills.
We cite the foregoing authorities merely as evidence of the repeated application of the recognized rule that each case must be decided in the light of its own facts and circumstances, bearing in mind the cardinal principle that the fees awarded must be reasonable in view of the amount of recovery and the nature and extent of services rendered as indicated by the complexity of the issues involved.
In the case at bar defendant deposited the sum of $200.00 in the registry of the trial court and we assessed penalties only upon the remaining $140.00.
Considering the above stated relevant and material circumstances, we believe our initial award of attorney's fees in the sum of $750.00 to be excessive and feel that an award of $400.00 as attorney's fees will do substantial justice to all concerned.
Accordingly, it is ordered, adjudged and decreed the award of attorney's fees in the sum of $750.00 herein initially decreed be and the same is hereby reduced to the sum of $400.00, and except as herein amended, our initial decree is affirmed.
Amended and affirmed.