LEMMON, Judge.
This is an appeal by plaintiff’s employer from a judgment awarding workmen’s compensation benefits for permanent partial disability, as well as penalties and attorney’s fees. On appeal defendant questions (1) the sufficiency of the evidence supporting the finding of disability caused by the accident and (2) the finding that it was unreasonable in terminating benefit payments.
Plaintiff had been employed by defendant as a laborer in the house shoring and moving business since September, 1971. He was injured on the job on January 18, 1973 when a trailer hitch fell on his right foot, causing undisplaced fractures of the first and second metatarsal bones. Defendant instituted compensation payments and referred plaintiff to Dr. D. M. Ewin, a general surgeon, for treatment.
When the fracture was healing satisfactorily after six weeks, Dr. Ewin removed the walking cast and prescribed special shoes for support. Improvement continued, and on April 3,1977 plaintiff was advised to return to work with continuing treatment, but went back to the doctor after one day *279 of work with reports of severe pain. Dr. Ewin recommended a metatarsal pad and an orthopedic consultation with Dr. George Berkett.
Plaintiff complained to Dr. Berkett of pain under the great toe. The doctor’s examination revealed diffused tenderness of the walking surface of the foot at the head of the great toe, callosity over the heads of the first, third and fifth metatarsals, a ca-vus foot (high arch in the foot) which caused “clawing” of the toes, and a hallux valgus deformity (a deformity in which the great toe is bent away from the other toes). He opined that the cavus foot and hallux valgus deformity pre-dated the accident and were not aggravated by the trauma. The doctor recommended a higher shoe correction and anticipated complete recovery, since the fractures were not displaced and did not extend into the joint.
On May 2,1973 plaintiff again attempted to return to work on Dr. Ewin’s advice, but complained of continued pain after standing for several hours. Defendant’s officer instructed him to seek further medical attention, which he did.
On May 11 Dr. Berkett, although noting plaintiff’s statement of no improvement, opined that plaintiff could return to work and that any temporary residual disability (estimated at 10% to 15% of the foot and based on plaintiff’s complaints which were consistent with the relatively recent injury) which plaintiff “may have” should subside and would cause no interference with employment duties. On May 15 Dr. Ewin, finding no swelling, also discharged plaintiff and recommended that he return to work.
On the basis of these reports defendant terminated compensation benefits after payment through May 18.[1]
Plaintiff did not return to work with defendant, but about a month later went to work for a moving company as a packer. (At time of trial in February, 1976 he was still engaged in this type of work). In the meantime plaintiff had consulted an attorney who demanded reinstitution of benefits and then filed suit in July after his demand was rejected.
In October, 1973 plaintiff returned at defendant’s request to Dr. Berkett who found a full range of motion and callosities over the three unaffected metatarsals. He stated his belief that plaintiff had completely recovered without residual disability.
In December, 1973 plaintiff consulted Dr. Frank Chalaire, a general practitioner, who found tenderness in the metatarsal area and the hallux valgus deformity, which he considered to be related to the fracture or to periostitis (inflammation of the perioste-um, the membrane which covers bones). He also diagnosed arthritic residual from the trauma. When plaintiff reported no relief after several weeks of treatment, Dr. Chalaire recommended orthopedic consultation.
In July, 1974 plaintiff consulted Dr. Mat-ko Milicic, an orthopedic surgeon, who found tenderness and calluses on the right foot under the metatarsal heads and the hallux valgus deformity (which he considered unrelated to the accident). He diagnosed metatarsalgia (pain in the metatarsus) which he attributed to the fracture because of the calluses and tenderness and because plaintiff had reported no such pain prior to the accident. He believed the discomfort (primarily from swelling after prolonged standing) was not so severe as to prevent gainful employment, but that the residual partial disability, estimated at 5% to 10% of the foot and 3% to 5% of the leg, was permanent.
At trial plaintiff testified that he still suffered pain under the toes upon standing for more than two hours. He denied that *280 any tenderness, callosity or hallux valgus deformity existed prior to the accident.

Existence of Disability and Causation

The medical evidence, outlined in detail above, provides sufficient support for the finding of permanent partial disability attributable to the accident.
All of the doctors agreed plaintiff’s persistent complaints were consistent with the injury sustained. Furthermore, the 37-year old plaintiff had a record of consistent work in heavy labor from the age of 16 and had never previously complained of problems in his right foot.[2] On the basis of this fact, together with the opinion of Dr. Mili-cic, we affirm the finding that plaintiff sustained a permanent partial impairment of function which was caused or aggravated by the accident.

Applicable Schedule of Payment

The trial court award of benefits at $12.50 per week for a maximum of 175 weeks was apparently based on R.S. 23:1221(4) (o) and (h), relating to partial loss of function of a leg. Citing Babineaux v. Great American Ins. Co., 245 La. 718, 160 So.2d 591 (1964), defendant argues that the court should have applied Section 1221(4)(g), which involves the loss of function of a foot.
The Babineaux case held that a carpenter, who had suffered an amputation at the first interphalangeal joint of his left index finger, was not entitled to compensation based on partial loss of function of the hand, but was limited to recovery in accordance with the injury schedule which specifically listed loss of a finger.
Some subsequent decisions have distinguished the Babineaux case when the evidence established that the degree of injury or amputation of one or more fingers has caused significant loss of use or function of the hand. See, for example, Mullins v. National Food Stores of La., Inc., 175 So.2d 19 (La.App. 4th Cir. 1965).
In workmen’s compensation cases great weight should be accorded the trial court’s conclusions as to the extent of disability. However, such conclusions must be supported by competent medical evidence.
In the present case there was no medical testimony whatsoever that the injury to plaintiff’s foot caused any loss of function of the leg. The only medical expert who mentioned any permanent disability of the leg admitted that he arrived at that disability rating by the mechanical formula of reducing the estimated disability of the foot by one-half. Such a method of assigning disability cannot alone support the judgment, without any other evidence that the injury actually affected the function of the leg.
The award should therefore be reduced to 125 weeks of compensation at the minimum rate.

Penalties and Attorney’s Fees

At the time defendant terminated compensation payments the medical opinion was unanimous that plaintiff could return to work without substantial pain and that no permanent disability existed. Although Dr. Berkett did state that plaintiff “may have” temporary partial disability based on plaintiff’s consistent complaints and the re-cency of the injury, he declined after the October examination to assign any partial disability, permanent or temporary, attributable to the accident.
When plaintiff was subsequently examined by doctors who expressed a contrary opinion as to permanent partial disability, defendant was reasonably justified in relying on the opinion of the original treating and consulting physicians. Under these circumstances we deem reasonable and non-arbitrary (1) defendant’s initial decision to terminate compensation and (2) its subsequent decision to defend the suit based on conflicting medical evidence, on which reasonable persons could draw different *281 conclusions.[3] We conclude that defendants reasonably terminated benefits based on uncontradicted medical opinion that plaintiff could return to work and that his residual complaints would not interfere with his duties and would subside in time.[4] Defendant further had the right, when the conflict of medical opinion occurred, to a judicial determination of whether any partial disability existed and, if so, whether such disability was attributable to the accident. See Lovisa v. Employers Ins. of Wausau, 343 So.2d 390 (La.App. 4th Cir. 1977).
Accordingly, the judgment of the trial court is amended to delete the award of penalties and attorney’s fees and to reduce the maximum period for payment of benefits to 125 weeks. As amended, the judgment is affirmed.

AMENDED AND AFFIRMED.

. There is some dispute as to proper payment of the last week of benefits. The record, however, clearly establishes that the May 18 check was drawn by defendant and made available to plaintiff where he customarily picked up his checks. Plaintiff apparently failed to do so because he had already hired an attorney. Apparently because of clerical confusion, the check was not forwarded to plaintiffs attorney until July 31, but these circumstances do not warrant imposition of a penalty.

. Plaintiff had suffered severe injuries to his left foot and leg in a childhood accident.

. In Breen v. Bituminous Cas. Co., 249 So.2d 338 (La.App. 4th Cir. 1971), relied on by plaintiff, the court, in imposing the penalty, specifically found that there was never a dispute as to the fact of permanent partial disability attributable to the accident.

. The thrust of plaintiffs argument is that defendant should have paid benefits for partial disability after May 18. There was no medical basis at that time for benefits for permanent partial disability under R.S. 23:1221(4)(o) or for any specific injury scheduled on Subsection (4). Furthermore, R.S. 23:1221(3)’s provision for benefits payable on account of partial disability to do work of any reasonable character was inapplicable by its terms under the only medical opinion then available.