377 So.2d 433 (1979)
Harold Dean NATIONS and Sammy Nations, Plaintiffs-Appellees,
v.
EXCESS INSURANCE COMPANY, Defendant-Appellant.
No. 13960.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1979.
Campbell, Campbell & Johnson by James M. Johnson, Minden, for defendant-appellant.
*434 Charles E. McConnell & Associates by Charles E. McConnell, Springhill, for plaintiffs-appellees.
Before PRICE, HALL and JONES, JJ.
HALL, Judge.
The defendant fire insurer appeals from a judgment against it for $41,000, together with 25 percent penalties and $8,800 attorney's fees awarded under the provisions of LSA-R.S. 22:658, for the value less deductible ($42,000 less $1,000) of plaintiff's log skidder which was destroyed by fire. On appeal defendant contends: (1) the log skidder was not a total loss but rather it could have been repaired for $22,500; (2) alternatively, there was a valid dispute between the litigants as to the extent of the loss and under these circumstances it was not arbitrary and capricious in failing to pay and should not have been cast for penalties and attorney's fees; and (3) alternatively, the attorney's fee award of $8,800 is excessive.

I.
The International Tree Farmer skidder was extensively damaged by fire. Plaintiff offered expert testimony from repair experts representing Scott Truck & Tractor Company, the dealer in the type skidder which was damaged; Southern Equipment & Tractor Company, a large dealer in heavy equipment; and Anthony Manufacturing Company, a manufacturer of heavy equipment. All three of the witnesses were very well qualified and experienced and all of them concluded the log skidder was a total loss. Their testimony was that it would cost more than its value to repair the skidder and that unsatisfactory results could be expected from attempting to repair a piece of equipment damaged so extensively.
Defendant offered the testimony of Paul J. Scott of Scott Hydraulics, Inc., to the effect that he would repair and guarantee the skidder for $22,500. Although well qualified in hydraulic equipment repair and manufacture, Scott had only rebuilt one burned log skidder. This job was completed by him more than a year before the trial, and he had not been successful in selling the rebuilt skidder and, therefore, his work had never been tested in the woods. Scott testified he was willing to take the business risk that he could repair the skidder for $22,500 with satisfactory results, but he had no specific experience to back up his ability to do so successfully. His proposal also contemplated using secondhand parts rather than replacing damaged parts with new International parts.
Because of the superior credentials and experience of plaintiff's experts as to this specific type equipment, damage and repair, the record abundantly supports the trial judge's conclusion that the log skidder was a total loss and the insurance company owed plaintiff for its value less the deductible.

II.
The log skidder burned while in the woods on July 14, 1977. A few days later, at the request of the insurance adjuster, the representative of Scott Truck & Tractor Company examined it and expressed the opinion it was a total loss. The insurance company later had the skidder moved from the woods to a salvage yard. It was not until October that Paul J. Scott made his proposal to repair the skidder. The insurance adjuster sent plaintiff a proof of loss and complete release form with the advice that if plaintiff would sign it the adjuster would submit the matter to the company for acceptance. Plaintiff did not sign the form and this suit followed in December 1977.
According to the record the defendant has never unconditionally tendered or delivered to plaintiff the $22,500 which it concluded was the correct amount of the fire loss, either before or after the suit was filed to the present time. The failure of the insurance company to pay the value of the skidder based on the speculative repair proposal by Paul J. Scott, as opposed to the total loss evaluation of the representative of Scott Truck & Tractor Company, was probably arbitrary in itself. In any event, under the well-settled jurisprudence, the insurer's *435 failure to tender or pay what it admittedly owed constituted an arbitrary and capricious failure to pay within the contemplation of LSA-R.S. 22:658, resulting in it being liable for penalties on the whole of its court-determined liability, and also in its being liable for plaintiff's reasonable attorney's fees. See this court's decision in Riverland Oil Mill v. Underwriters for Lloyd's, 368 So.2d 156 (La.App.2d Cir. 1979), writ denied, 369 So.2d 1365 (1979) and the authorities cited therein.

III.
The remaining issue on appeal is the amount of the attorney's fee award. The trial court apparently fixed the amount of the award based on 83 hours preparation time by the plaintiff's attorney at $100 per hour, plus $500 for the one-day trial, or a total of $8,800. Plaintiff's expert witness on the attorney fee issue testified that the maximum hourly rate charged by attorneys in the area is $100 per hour and that he customarily charged $500 for a full trial day. The expert's review of the plaintiff's attorney's time records also reveals that some of the time was devoted to another lawsuit involving a claim by the salvage yard for storage. The expert testified that a one-fourth contingent fee would be reasonable in a case like this, but there is no evidence in the record of the nature of the agreement between plaintiff and his attorney as to the fee to be charged, contingent or otherwise.
The fee awarded must be reasonable in view of the amount of recovery and the nature and extent of services rendered as indicated by the complexity of the issues involved. Each case depends upon its own facts and circumstances. Mitchell v. Connecticut Indemnity Company, 161 So.2d 460 (La.App.1st Cir. 1963). This case was thoroughly prepared and expertly presented by plaintiff's counsel. However, the issues are not complex and the trial took only one day. Taking all of the factors into consideration the fee established by the district court is excessive and amounts to an abuse of the trial court's discretion. We reduce the attorney's fee to $5,000 for the services rendered in the trial court and on appeal. See and compare Pellets, Inc. v. Millers Mutual Fire Insurance Company, 241 So.2d 550 (La. App.2d Cir. 1970), writ refused, 257 La. 607, 243 So.2d 274 (1971), $18,000 fee, being 25 percent of $71,750 recovered, involving a five-day jury trial with several third party demands; Riverland Oil Mill v. Underwriters for Lloyd's, supra, $17,500 fee where the insureds had paid their attorney's fees and expenses of approximately that amount as of trial date, the trial lasted seven days, the issues were extremely complex, and recovery was $200,000; Alexander v. Burroughs Corporation, 350 So.2d 988 (La.App.2d Cir. 1977) and 359 So.2d 607 (La.1978), $7,000 fee for services rendered in the trial court, court of appeal and supreme court, in a redhibitory action involving recovery of approximately $25,000 and involving complex factual and legal issues.

IV.
The judgment of the district court is amended to reduce the award for attorney's fees from $8,800 to $5,000. As amended the judgment is affirmed at appellant's costs.
Amended, and as amended, affirmed.