Judgment rendered May 10, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,092-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KCREW INVESTMENTS, LLC                    Plaintiff-Appellee

versus

JOHNATHAN DANGELO                         Defendant-Appellant
CLARK

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 624,785

Honorable Brady O'Callaghan, Judge

* * * * *

NEUPERT & ASSOCIATES, LLC                 Counsel for Appellant
By: Charles J. Neupert, Jr.


WILLIAM E. BYRAM, LTD., APLC              Counsel for Appellee
By: William E. Byram


* * * * *

Before STONE, HUNTER, and ELLENDER, JJ.

**ELLENDER, J.**

Johnathan Clark, the seller, appeals a judgment ordering specific performance of a residential real estate buy-sell agreement with KCREW Investments, the buyer, and ordering Clark to pay KCREW's attorney fees of $9,366.00. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

In 2007, Clark, who was unmarried at the time, bought a house and lot on Jessica Drive, in Forbing Woods Subdivision in southwest Shreveport, for $82,000. At some point, he married Shanika and the couple used the house as their marital home; they also placed an FHA second mortgage on it. By January 2020, however, the couple had separated and Clark had relocated to Irving, Texas. He then decided to list the house (along with another property) for sale with Eunice Johnson-Strickland, an agent with Keller Williams Realty.

A prospective buyer, KCREW Investments LLC, acting through its agent, John Lorick of Re/Max Realty, made an offer of $60,000. Clark rejected this, so KCREW counteroffered $65,000, which Clark accepted.

The parties DocuSigned a "Louisiana Residential Agreement to Buy or Sell" ("the Agreement") on January 20, 2020. This listed Ms. Johnson-Strickland as seller's agent, Keller Williams as seller's broker, and Clark *and his wife* as sellers. It listed Re/Max as the "selling firm," John Lorick as buyer's agent, and KCREW as buyer. It stated a closing date of February 18.

At Clark's request, the parties pushed back the closing date several times; each time, Ms. Johnson-Strickland prepared an addendum. Addendum #1 moved the closing to March 3, 2020; like the Agreement, it

listed both Clark and his wife as sellers. Addendum #2 moved the closing to March 27; it listed only Clark (not his wife) as seller, but listed *Nathan Lorick* (not John Lorick) as buyer. Addendum #3 moved the closing to April 3 and listed Clark as seller and Nathan Lorick as buyer. Addendum #4 moved the closing to April 6; it also listed Clark as the sole seller and Nathan Lorick as buyer.

On April 6, at the appointed time and place (11:00 am CDT, at an attorney's office on Ashley Ridge Blvd.), John Lorick appeared along with a representative from his mortgage lender. However, Clark did not appear. The attorney's secretary, Ms. Strozier, tried calling and emailing him, but he did not respond. The realtor, Ms. Johnson-Strickland, told them he would not come because he had to bring $7,000 to the closing to settle the FHA mortgage, a fact that he was unhappy with. Ms. Johnson-Strickland also told them that, in her view, Clark could not convey clear title because his wife, Shanika, had acquired an interest in the property. Later in April, KCREW sent Clark a demand letter, which went unanswered.

## PROCEDURAL HISTORY

KCREW filed this suit, to enforce specific performance of a real estate agreement, on July 13, 2020. Clark never answered, so KCREW took a default judgment, which the district court confirmed on September 10, ordering specific performance and awarding attorney fees of $2,000.

Notice of judgment apparently got Clark's attention; he retained counsel and took an appeal. This court reversed the default judgment on grounds that service had been made on Clark's estranged wife at an address other than the one in the citation, and that no sheriff's return appeared in the

2

record. *KCREW Inv. LLC v. Clark*, 54,003 (La. App. 2 Cir. 6/30/21), 324 So. 3d 242.

After proper service was made on Clark, he asserted that he was justified in skipping the closing because he thought he could not deliver merchantable title to the property.

The matter came to bench trial in January 2022. Called by KCREW, Ms. Johnson-Strickland testified that she drafted the four addenda. She admitted that, in Addendum #1, the agent's name was not correct and Clark's wife was listed as a seller. She honestly believed that Shanika was part owner, and she had so advised Clark. She also stated that she dealt only with *John Lorick*, and had never met Nathan Lorick, even though the latter's name appeared in two of the addenda. She also pointed out that the Dotloop verification on Addendum #4 was time-stamped 12:38 pm EDT, some 38 minutes after the closing was supposed to occur (11:00 am CDT). She agreed, however, that despite the different names, she knew the buyer was indeed KCREW; she and Clark both knew the closing was set for 11:00 am on April 6; and Clark was the person who had requested all the delays.

Ms. Strozier, the attorney's secretary, confirmed that Clark was a no-show for the closing. She also testified that she had sent him a proposed HUD-1 settlement showing that he owed $7,000 on the FHA loan.

John Lorick testified that he was a realtor with Re/Max and agent for all of KCREW's local dealings. Further, Nathan Lorick is his son, the 100% owner of KCREW, a Colorado LLC, and Nathan might have DocuSigned a few of the papers in this case, but KCREW was the actual buyer. John Lorick added that it was Clark's agent, Ms. Johnson-Strickland, who inputted all data to the addenda. Finally, he testified that he wanted to

3

enforce the Agreement's provisions for specific performance and attorney fees.

Clark testified that he had lived in the house some 12 or 13 years, and after he and his wife moved out, they retained it as a rental property; they charged $825 a month rent, which barely offset the FHA mortgage of $760 a month plus upkeep. He admitted that he attended the closing on his other property one hour earlier, at 10:00 am April 6, but skipped this one because this realtor told him he would have to pay $7,000 to settle the FHA mortgage (a fact that, in his words, "blew my mind") and because he was unsure whether the house was community property.[1] He also stated that paying tenants had been in the house until four or five months before trial; after they left, he let his brother stay there rent-free.

The court ruled from the bench that Clark had "credibility issues," and ignorance of the value of his FHA mortgage was not a defense. The court allowed Lorick to inspect the property, after which Lorick advised that he still wanted specific performance.

The court also told Lorick to submit an affidavit of attorney fees, and Clark to traverse it. Lorick's affidavit covered entries from April 2020 through February 2022, a total of 47.33 hours, at $200 an hour. Clark countered that many of these hours related to the default judgment, which was reversed; it would "defy sound judicial norms, logic and common sense" to award fees for a judgment that the attorney lost.

---

[1] Clark offered no evidence to show that he transferred the house, which was his separate property, to the community, or that it was otherwise transformed into community property.

4

The court rendered judgment ordering Clark to convey the property to KCREW for the price of $65,000 and to pay attorney fees of $9,366.00 (46.83 hours at $200 an hour).[2]

Clark appealed devolutively, raising two assignments of error.

## DISCUSSION

### *Existence of a Written Contract*

By his first assignment of error, Clark urges the court erred in finding there existed a written contract signed by the seller and the buyer, which obligated Clark to appear at an 11:00 am closing on April 6, 2020. He concedes the standard of review is manifest error, *Ryan v. Zurich Amer. Ins. Co.*, 07-2312 (La. 7/1/08), 988 So. 2d 214. He contends, however, that the party seeking to enforce a contract must prove its existence, La. C.C. art. 1831; when the law requires a writing, the contract cannot be proved by testimony or presumption, La. C.C. art. 1832; and any transfer of immovable property must be by authentic act, La. C.C. art. 1839.

He also cites the "act of sale" clause of the Agreement: any change of the date for execution of the sale "must be mutually agreed upon in writing and signed" by both parties. He argues that the four addenda do not meet this clause. First, the Dotloop verification on Addendum #3 was March 30, two days *after* the expiration provided in Addendum #2, resulting in a two-day gap in which there was no enforceable agreement. Second, the Dotloop verification on Addendum #4 was April 6 at 12:38 pm EDT, 38 minutes *after* the proposed closing; he contends this gave the buyer an extra 38 minutes to extract concessions out of the seller. He further contends that

_____

[2] This total reflects the full amount listed in KCREW's affidavit, less 0.50 hours for preparing the affidavit.

Nathan Lorick did in fact extract these concessions, but he does not specify what they were.

The interpretation of a contract is a determination of the common intent of the parties. La. C.C. art. 2045; *Olympia Minerals LLC v. HS Res. Inc.*, 13-2637 (La. 10/15/14), 171 So. 3d 878. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046; *Olympia Minerals v. HS Res.*, *supra*; *Lacas v. Monroe Credit LLC*, 54,170 (La. App. 2 Cir. 12/15/21), 332 So. 3d 1264. Further, La. C.C. 1848 provides:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act[.] *Nevertheless, in the interest of justice, that evidence may be admitted* to prove such circumstances as a vice of consent or *to prove that the written act was modified by a subsequent and valid oral agreement.* (Emphasis added.)

In other words, the court may consider parol evidence as proof of a subsequent agreement to modify or revoke a written agreement by mutual consent of the parties. *Torrey v. Simon-Torrey Inc.*, 307 So. 2d 569 (La. 1974); *Lacas v. Monroe Credit LLC*, *supra*, and citations therein.

On close review of the Agreement and the four addenda, we find nothing that would negate the existence of a valid contract for Clark to sell the property to KCREW for $65,000 at a closing at 11:00 am, April 6, 2020. We concede the minor discrepancies in the Agreement (such as listing Re/Max as the "selling firm" when it was, in fact, the buying firm) and between the Agreement and the four addenda (two of which listed Shanika as a seller, when she had no interest in the property, and two of which listed Nathan Lorick as the buyer's agent, when in fact this was John Lorick).

6

There is also the slight irregularity in the Dotloop verifications (fixing the time after the closings were supposed to occur). However, none of these errors had any genuine effect on determining the common intent of the parties. Notably, the parties continued to execute new addenda, a fact which dispels the contention that Clark's intent to sell, and KCREW's intent to buy, did not exist. Collectively, these documents support the existence of the contract.

Even if these discrepancies might have muddied the issue of intent, the testimony, admissible under Art. 1848, totally confirms the existence of a contract. Clark's agent, Ms. Johnson-Strickland, testified that he knew the identity of the buyer, and the date and time of the closing. The secretary, Ms. Strozier, testified that she sent Clark a proposed HUD-1 settlement showing that he owed $7,000 on the FHA mortgage. Clark candidly admitted that the reason he skipped the closing was that he would have to bring along $7,000 to complete the transaction, something he was unwilling (and perhaps unable) to do. The fact that one side made a "bad deal" is not an "absurd consequence" that would justify rescinding the contract. *Gibbs Const. Co. v. Thomas*, 500 So. 2d 764 (La. 1987); *Southern Farm Bur. Life Ins. Co. v. Cox*, 51,930 (La. App. 2 Cir. 4/11/18), 247 So. 3d 999, *writ denied*, 18-0747 (La. 9/14/18), 252 So. 3d 486, and citations therein.

The district court was not plainly wrong in finding the Agreement was a valid contract and in ordering specific performance. This assignment of error lacks merit.

### Attorney Fees

By his second assignment of error, Clark urges the attorney fees awarded are unreasonable and excessive. He cites the court's inherent

authority to reduce attorney fees that are excessive, *Nations v. Excess Ins. Co.*, 377 So. 2d 433 (La. App. 2 Cir. 1979). He argues it is "customary" for promissory notes to state a 25% attorney fee and for personal injury attorney contracts to state 33%; by contrast, the "default of agreement by buyer" clause of the Agreement stipulated damages of 10% of the purchase price, or $6,500; he asserts $9,366 is 144% of damages and patently excessive. He suggests an award of 25% of stipulated damages, or $1,625, would be reasonable. In the alternative, he contends it was an abuse of discretion to award attorney fees for time spent obtaining a default judgment that was later reversed. He submits that only the hours logged after June 30, 2022, should be allowed, 25.68 hours, or $5,136.

KCREW responds that an award of attorney fees is subject to the trial court's discretion, *Hinds v. Hinds*, 22-0444 (La. App. 4 Cir. 1/26/23), __ So. 3d __, and that this award is no abuse of discretion.

As a rule, attorney fees are not allowed in Louisiana unless they are authorized by statute or provided for by contract. *State v. Wagner*, 10-0050 (La. 5/28/10), 38 So. 3d 240; *Quinlan v. Sugar-Gold*, 53,348 (La. App. 2 Cir. 3/11/20), 293 So. 3d 722. Courts may inquire into the reasonableness of attorney fees as part of their inherent authority to regulate the practice of law, regardless of the language of the statutory authorization or the method employed by the trial court in fixing the award. *Smith v. State*, 04-1317 (La. 3/11/05), 899 So. 2d 516; *Brightwell v. City of Shreveport*, 54,824 (La. App. 2 Cir. 2/8/23), 356 So. 3d 586, and citations therein. Factors to consider in assessing the reasonableness of a fee include (1) the ultimate result obtained, (2) the responsibility incurred, (3) the importance of the litigation, (4) the amount of money involved, (5) the extent and character of the work

8

performed, (6) the legal knowledge, attainment, and skill of the attorneys, (7) the number of appearances involved, (8) the intricacies of the facts involved, (9) the diligence and skill of counsel, and (10) the court's own knowledge. *State v. Williamson*, 597 So. 2d 439 (La. 1992); *Quinlan v. Sugar-Gold*, *supra*. The appellate court reviews an award of attorney fees for an abuse of discretion. *Covington v. McNeese State Univ.*, 12-2182 (La. 5/7/13), 118 So. 3d 343; *Quinlan v. Sugar-Gold*, *supra*.

The Agreement states, in pertinent part:

> The prevailing party to any litigation brought to enforce any provision of this Agreement shall be awarded their attorney fees and costs. The SELLER may also be liable for Broker fees.

Plainly, this provision does not limit attorney fees to 25% or 33%; even though these percentages may be customary in some contracts, the Agreement gives no basis for either suggested rate. The district court did not abuse its discretion in failing to apply a nonexistent rate.

Finally, we have reviewed the award for abuse of discretion using the factors of *State v. Williamson*, *supra*, and *Quinlan v. Sugar Gold*, *supra*. The "ultimate result obtained" was a judgment in favor of KCREW, and this satisfies the first and primary factor. We also consider the amount of money involved. The liquidated damages, at $6,500, were relatively low, but the true object of the litigation was to enforce the sale of a $65,000 house; by that measure, the attorney fee is only 14.4% of the recovery and does not strike us as excessive.

The other relevant factor is the extent and character of the work involved. A court may find, in the interest of justice, that the prevailing party is entitled to fees even for actions or procedures that were not

9

successful. *Krielow v. La. State Univ. Bd. of Sup'rs*, 19-0176 (La. App. 1 Cir. 11/15/15), 290 So. 3d 1194. This court's prior action reversed a default judgment on procedural grounds, not for substantive reasons. In the default judgment, the district court set attorney fees at only $2,000. While Clark had good reason to challenge that judgment on procedural grounds, his substantive arguments in response to KCREW's principal claim (such as community property) were unsupported by the facts or the law. Clark's decision to move forward with the litigation involved the risk that he would be unsuccessful in the end and expose himself to attorney fees far greater than those initially awarded.

In light of these considerations, we do not perceive any abuse of the district court's discretion. This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, we AFFIRM the judgment ordering the specific performance of the Agreement and awarding attorney fees of $9,366.00. Costs are to be paid by the appellant, Johnathan Dangelo Clark.

**AFFIRMED**.